**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JEREMIAH COCHRAN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 24 C 1275** |
| | ) | |
| **CHANCE JONES,** | ) | |
| | ) | |
| **Respondent.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Jeremiah Cochran currently is serving a forty-year prison sentence after a jury convicted him on two counts of aggravated criminal sexual assault and one count of aggravated kidnapping. After litigating through direct appeal and post-conviction proceedings at the Illinois state court, Cochran has filed a habeas corpus petition under 28 U.S.C. § 2254.

Cochran asserts four grounds for relief, challenging only the convictions for sexual assault, not kidnapping. First, he alleges that prosecutors engaged in misconduct in violation of *Brady v. Maryland* by failing to produce a statement written by the victim, S.M. Cochran also asserts ineffective assistance of counsel claims on three separate grounds. First, Cochran contends that his counsel should have moved for a mistrial based upon the non-production of S.M.'s written statement. Second, he argues that his trial counsel, who was newly appointed three weeks before the trial, misled the trial court into finding that he was adequately prepared for trial. Third, Cochran contends that counsel failed to introduce a police report that he says would have

committed S.M. to her prior inconsistent statements. For the following reasons, the Court denies Cochran's section 2254 petition.

## Background

### A. Factual background

The following facts are taken from the state appellate court's orders on direct appeal and post-conviction appeal. They are presumed correct under 28 U.S.C. § 2254(e)(1).

S.M., the victim in this case, is Cochran's former girlfriend. They began dating in 2009, and S.M. is the mother of Cochran's two sons.

The events underlying the charges against Cochran occurred on January 26, 2013. On that day, S.M. visited a laundromat in Waukegan with her two sons and boyfriend. The laundromat was attached to an apartment building where Cochran's mother lived. At some point while S.M. was in the building, Cochran called her and asked her to leave their sons at his mother's home so he could visit them. S.M. refused to comply and instead took her children out of the apartment building. On her way out of the lobby, she found Cochran blocking the front door.

At this point, S.M. and Cochran's versions of events begin to diverge. The state appellate court recounted the kidnapping, beating, and sexual assault that followed:

> At trial, S.M. testified that defendant hit her, forced her into a car, took her to a house in Waukegan, beat her severely, and then penetrated her anally and vaginally. Defendant testified that S.M. went with him willingly, that they had consensual sex, but later argued and he struck her (though he could not recall how many times he had punched her or what objects she was hit with). Evidence was admitted showing multiple injuries to S.M.'s head, face, neck, legs, knees, and right arm. In addition, evidence from the crime scene in Waukegan showed a large hole in the drywall as well as what appeared to be bloodstains on the walls, the carpet, the window blinds, the mattress, the bathtub, some women's clothing, a broken stick, a pair of wire cutters, and a pair of boots.

*People v. Cochran*, 2023 IL App (2d) 210298-U, ¶ 4.

S.M. testified that after the initial beating and sexual assault, Cochran demanded her Facebook password, which she ultimately provided after he got on top of her and threatened to remove her teeth with a set of pliers. After searching her Facebook account, Cochran cut off S.M.'s hair with a pair of scissors. He then ordered her to clean the blood off the bedroom walls and take a shower. Later, he brought S.M. a steak and continued to ask her questions, threatening to kick her with his boots if she did not cooperate. Once Cochran left the bedroom, S.M. escaped by jumping out of the window. She ran to the home of a nearby neighbor. The neighbor helped S.M. call the police and get to a hospital.

Cochran offers a different version of the events that day. He states that he and S.M. smoked marijuana, conversed, drank, and at some point, once they were alone, returned to the bedroom where they had sex and eventually fell asleep after eating a meal. He contends that when he woke up, S.M. was using his laptop, and he saw her Facebook account open to comments questioning the parentage of their younger son. Cochran states that after he asked S.M. about the comments, they had a heated conversation. Cochran admits that he punched S.M. two times, pushed her against the wall, hit her with a table, and pulled her hair. He states that she eventually left the room through the bedroom window.

**B.    The trial**

S.M. made multiple statements to officers and nurses in the investigation that followed. In addition, in the days after the incident, she told the defendant's investigator, Marilu Serrato, that she had consented to sexual acts with Cochran. At trial, S.M.

3

explained that she had said this only because "'[she] was feeling bad because [she] didn't want him to have a whole bunch of years for this heinous crime.' She maintained, however, that she had not actually consented to the sex acts, explaining that she had submitted out of fear." *People v. Cochran*, 2016 IL App (2d) 140768-U, ¶ 12.

Defense investigator Serrato compiled a report as part of his investigation that was not offered into evidence at trial. This report underlies one of the grounds for Cochran's claims of ineffective assistance of counsel. The report recounted S.M.'s statements to Investigator Serrato on a phone call, including that she smoked marijuana on the night of the assault and was high during the assault; she "clarified that the sex was not rape"; she told the police Cochran raped her because she was angry at him for beating her; and when she was at the hospital, the Illinois Department of Children Family Services (DCFS) had encouraged her to relinquish her parental rights due to endangering her children. Habeas Corpus Pet. (dkt. 1), ECF p. 11 of 17.

During the trial, S.M. testified as set out in the summary on page two of this opinion. She also testified that Cochran had physically abused her before, on April 12, 2012 and May 30, 2012, and that these prior interactions influenced her instinct to obey Cochran on the date of the charged offenses. During her testimony, S.M. also admitted that she smoked marijuana with Cochran on the night of January 25 and admitted to telling a detective that the reason she told the police that Cochran raped her was that she was angry at Cochran.

Victoria Virgilio, a registered nurse and sexual-assault nurse-examiner who had performed a sexual assault kit on S.M, testified that she observed bruising, swelling, and whitish stains on S.M.'s body.

4

Numerous officers and detectives testified at trial, but the testimony of one officer, Officer Gary Grayer of the North Chicago Police Department, is particularly relevant to Cochran's habeas corpus petition. Grayer responded to S.M.'s initial call after she escaped from Cochran's apartment. He testified that he left a blank statement form with S.M. at the hospital so that she could fill it out once she had recovered from her hand injuries. Grayer further testified that S.M. returned this statement to the department. He could not recall if he read the statement but stated that it should have been placed in a box to be handed over to the detectives who took over the case. This statement by S.M. was not admitted into evidence and, indeed, was not produced to Cochran or his trial attorneys. During an evidentiary hearing on Cochran's state post-conviction petition, the trial prosecutor stated that he did not recall receiving any handwritten statement by S.M., and Cochran's trial counsel stated that he did not recall Grayer's testimony on this matter. At that same hearing, the parties stipulated that despite a diligent search of its records, the prosecution was unable to locate S.M.'s written statement.

**C.    Post-trial proceedings**

**1.    State direct appeal**

At trial, the jury found Cochran guilty of aggravated kidnapping under 720 Ill. Comp. Stat. 5/10-2(a)(5) and two counts of aggravated criminal sexual assault under 720 Ill. Comp. Stat. 5/11-1.30(a)(1). The trial court sentenced him to a prison term of forty years.

On direct appeal, Cochran limited his challenges to his sexual assault conviction, arguing that the trial court abused its discretion by admitting evidence that he resisted

when the police attempted to take a DNA sample from him. The state appellate court concluded that even if the trial court had abused its discretion by admitting evidence of Cochran's initial reluctance to DNA testing, the error was harmless because there was overwhelming evidence of Cochran's guilt.

Cochran filed a petition for leave to appeal (PLA), but the Supreme Court of Illinois denied the petition.

### 2. State post-conviction proceedings

Cochran next filed a state post-conviction petition, proceeding initially pro se and then with the benefit of counsel. After counsel was appointed, Cochran filed a supplemental petition for post-conviction relief. In this petition, he asserted the following claims:

- A claim of ineffective assistance of counsel based on Cochran's contention that when his initial public defender resigned from his case, she misled the trial court into believing she would still be involved with the case. This caused the court to fail to reassign the case to other trial counsel who would have had sufficient time to prepare for the trial, which was only a few weeks away. Cochran also argued that newly appointed counsel incorrectly assured the court that he was ready for trial despite being unprepared.

- A *Brady* claim and a claim of ineffective assistance of counsel arising from the prosecutor's failure to produce a written statement that S.M. had made to police officers and defense counsel's allegedly inadequate response to this.

- Ineffective assistance of counsel arising from counsel's claimed failure to effectively demonstrate S.M.'s level of intoxication at the time of the alleged

offense.

- Ineffective assistance of counsel arising from counsel's failure to raise during cross-examination of S.M. the contention that she was improperly influenced by suggestions from DCFS that she should relinquish her parental rights.

- Ineffective assistance of counsel based on counsel's failure to introduce an investigator's report about the incident and use it to impeach S.M.'s trial testimony.

- Prosecutorial misconduct arising from the prosecution allowing S.M. to testify inconsistently with her statements in the investigator's report.

- Error by the trial court in allowing the prosecution to introduce two of Cochran's prior assaults upon S.M. Relatedly, Cochran asserted that defense counsel was ineffective in not challenging the allegedly vague motion *in limine* concerning this point. On this same point, Cochran further asserted that the trial court erroneously instructed the jury that it could use the prior assaults to address the issue of the relationship between S.M. and Cochran, when it should have instructed the jury to use them only to address the issue of consent, as established by the motion *in limine*.

- Ineffective assistance of counsel arising from counsel's failure to impeach S.M. by eliciting that there was an order of protection in force during the time she testified to having an ongoing relationship with Cochran.

- Prosecutorial misconduct and ineffective assistance of counsel arising from the fact that the nurse was permitted to testify using Cochran's name, without any objection from the defense or the court, despite a *motion in limine* that the

witness could not offer identity testimony.

- Ineffective assistance of counsel consisting of counsel's failure to inform Cochran that the prosecution planned to introduce witness testimony of a detective who would testify that he had had a conversation with Cochran after Cochran waived his Miranda rights. Cochran denied ever making statements to the detective and claimed that counsel was ineffective for failing to challenge the veracity of the statement.

In response to Cochran's supplemental petition, the state trial court held an evidentiary hearing. During this hearing, Cochran pursued his ineffective assistance of counsel claim on the following grounds: that trial counsel failed to seek a mistrial based on S.M.'s written statement and failed to object to the nurse testifying using Cochran's name as S.M.'s attacker. After the evidentiary hearing, the state trial court issued a 38-page memorandum decision, denying Cochran's petition.

Cochran appealed the trial court's decision, asserting only some of his claims on appeal. Specifically, he challenged the following: trial counsel's failure to seek discovery sanctions after the prosecution did not turn over S.M.'s written statement to the police and counsel's failure to object to a nurse offering improper identification hearsay; the trial judge's claimed broadening of the use of other-crimes testimony; trial counsel's inadequate impeachment of S.M.; and trial counsel's failure to address the prosecution's attacks against Cochran's credibility.

The state appellate court affirmed the trial court's ruling, and the Illinois Supreme Court denied Cochran's PLA.

### 3.    Cochran's habeas corpus petition

Cochran has filed a habeas corpus petition under 28 U.S.C. § 2254.  He asserts four grounds for relief.

First, Cochran argues that the prosecution committed misconduct by failing to produce S.M.'s written statement to the police.  As discussed earlier, Officer Grayer, the first officer dispatched after S.M. called the police, testified at trial that S.M. provided a handwritten statement to the police department and indicated that this statement was turned in to the department's investigations division.  Cochran argues that he was prejudiced by the non-production of the statement.

Second, Cochran argues that his trial counsel was ineffective for failing to file a motion for a mistrial based on the non-production of S.M.'s written statement, despite Grayer's testimony that the statement existed.

Third, Cochran argues that trial counsel misled the trial court into believing that he was prepared for trial, despite being appointed only a few weeks before the trial. Cochran contends that he was denied the right to effective and prepared trial counsel.

Fourth, he argues that trial counsel was ineffective for not introducing at trial a report prepared by defense investigator Marilu Serrato that included statements made by S.M. that would have assisted defense counsel in more effectively cross-examining S.M. about her and Cochran being high on marijuana the day of the assault and about DCFS's threats to get involved with their children.

### Discussion

A federal court may issue a writ of habeas corpus under section 2254 "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or

9

treaties of the United States." 28 U.S.C. § 2254(a).  If the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," then the prisoner has established a constitutional violation and is entitled to relief.  28 U.S.C. 2254 § (d).

A decision is contrary to established federal law "if the state court applied a rule that contradicts the governing law set forth in this Court's cases or confronts facts that are materially indistinguishable from a Court decision and nevertheless arrives at a different result." *Lockyer v. Andrade*, 538 U.S. 63, 64 (2003).

A decision is an unreasonable application of established precedent if it is "objectively unreasonable, which is different from incorrect." *Bell v. Cone*, 535 U.S. 685, 686 (2002).  The fact that a federal court might disagree with the state court or would have reached a different conclusion is not a basis, alone, to find a state court decision unreasonable.  *See Nichols v. Wiersma*, 108 F.4th 545, 557 (7th Cir. 2024).  For a decision to be unreasonable, it must be "far outside the boundaries of permissible differences of opinion." *Id.* (internal citations and quotation marks omitted).

The Court discusses each of Cochran's claims in turn.

## A.    Prosecutorial misconduct and ineffective assistance of counsel based on alleged *Brady* violation (claims 1 and 2)

The first two claims presented by Cochran are interrelated.  First, he argues that the prosecution engaged in misconduct by failing to produce S.M.'s written statement at trial.  Second, he contends that defense counsel was ineffective for not seeking a

mistrial due to the non-production of the statement. Cochran asserted both claims in his post-conviction petition, his appeal from the trial court's denial of the petition, and his PLA to the Illinois Supreme Court. Because Cochran exhausted these claims and the state court reached the merits of the claims, the Court may reach the merits. *See* 28 U.S.C. § 2254(d). Respondent contends that the state court's decision was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

### 1.    Prosecutorial misconduct (claim 1)

The Court may grant a writ of habeas corpus only if the state court acted contrary to or unreasonably applied established U.S. Supreme Court precedent. 28 U.S.C. § 2254(d). Cochran argues that the nonproduction of S.M.'s statement violated *Brady v. Maryland*. "A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused." *Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006). To establish a *Brady* violation, the accused must show that the prosecution suppressed favorable evidence that was material either to guilt or punishment. *See Brady v. Maryland,* 373 U.S. 83, 87 (1963). But if, as appears to be the case here, the issue is that potentially useful evidence is lost or destroyed, the accused must meet a different standard: he must show bad faith on the part of the police or prosecution, otherwise, the "failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). In addition to bad faith, the accused must also establish that the "the exculpatory value of the evidence was apparent before it was destroyed; and . . . the evidence was of such a nature that the petitioner was unable to obtain comparable evidence by other

reasonably available means." *Nichols*, 108 F.4th at 554.

The Court finds that the state court reasonably applied the *Youngblood* standard. During the jury trial, Officer Grayer testified on cross-examination that he asked S.M. to submit a handwritten statement. But because of her extensive injuries and swelling, he left a form with her at the hospital so that she could fill it out once her injuries had subsided. Grayer confirmed that S.M. had turned in a statement to his office and that the statement was then turned in with the paperwork that would get forwarded to the investigations department. He could not recall the exact day this happened and stated that afterwards, another officer took over the case. When asked again whether he gave the statement to anyone, Grayer clarified that: "It was turned in with the paperwork. It always gets forwarded to investigations. So I don't know if Waukegan took it over."

Cochran contends this testimony is damning; he says it shows that the prosecution "committed misconduct by not tendering S.M.'s handwritten statement." Cochran Reply Br. at 3. He argues that the jury should have been able to "examine each statement of evidence . . . to touch, feel, examine, and understand the weight of the evidence could change . . . any decision of the jury . . . ." *Id.* at 5. Applying the *Youngblood* standard, Cochran argues that the record demonstrates bad faith because Officer Grayer testified to the statement's existence, and the prosecutor could have chosen to interview Grayer and S.M. about this fact but chose not to do so. Cochran contends that the prosecutor did not attempt to correct matters after failing to produce this statement, in violation of *Brady*, during the trial, further showing his bad faith. Cochran also points to the prosecution's violations of the trial judge's ruling on the motion *in limine*, which prevented a medical nurse from testifying using Cochran's

12

name.

On Cochran's post-conviction appeal, the state appellate court cited and addressed the *Youngblood* standard. It concluded that Cochran had not even alleged, let alone established, bad faith on the part of the police or prosecutors. "More importantly," the state court concluded, "at most, S.M.'s written statement would have been cumulative." *People v. Cochran*, 2023 IL App (2d) 210298-U, ¶ 23. The court adopted the assumption that the statement was exculpatory in the sense of indicating that S.M. and Cochran had consensual sex. It found, however, that "there was additional evidence that S.M. had previously said as much": other evidence was introduced at trial, including from S.M. herself, that she had previously stated on more than one occasion that she had consented. *Id.*

The appellate court's application of *Youngblood* was not unreasonable. Bad faith requires a showing of "'official animus' or a 'conscious effort to suppress exculpatory evidence.'" *Jones v. McCaughtry*, 965 F.2d 473, 477 (7th Cir. 1992) (internal citations omitted). Cochran offers no direct evidence that any member of law enforcement or the prosecution deliberately disposed of S.M.'s statement. Indeed, the primary way we know the statement existed is that a law enforcement officer, Officer Grayer, testified that he received it and handed it over to the Waukegan police department. That is hardly evidence of deliberate destruction; the way we know the statement existed in the first place is that a member of law enforcement testified about it. And the prosecution's claimed violation of an unrelated *in limine* ruling at trial is not evidence that the police— or anyone else on the prosecution side—deliberately concealed or destroyed the statement. The Court likewise finds unpersuasive Cochran's apparent contention that

13

the prosecution's failure to question Grayer about the statement during the trial somehow indicates that the statement was destroyed or concealed in bad faith.

Just as importantly, the state appellate court's conclusion that the statement—assuming it indicated S.M.'s consent—would have been cumulative was a reasonable application of *Youngblood*. As the state court indicated, there was evidence of other statements by S.M. that she had consented, and this evidence made it to the jury. In short, the appellate court reasonably concluded that the missing statement was *not* "of such a nature that [Cochran] was unable to obtain comparable evidence by other reasonably available means." *Nichols*, 108 F.4th at 554.

Cochran cites *Napue v. Illinois*, saying it stands for the proposition that the prosecution should be held responsible for not correcting false testimony presented at trial. *Napue v. Illinois*, 360 U.S. 264, 265 (1959). But *Napue* (which predated *Brady* by several years) was not about the failure to produce exculpatory evidence or about the loss or destruction of potentially helpful evidence. Rather, it involved a prosecution witness who falsely testified that he had not been promised consideration to testify for the prosecution, and the failure of the prosecutor, who knew this was false, to correct the false statement. *Napue,*, 360 U.S. at 265. The Supreme Court concluded that the prosecutor's effective greenlighting of false testimony called for the same result as obtaining a conviction via false evidence. *Id.* at 269.

The situation in this case is different. Officer Grayer did not testify falsely, and S.M., though she contended at trial that Cochran had forcible, non-consensual sexual intercourse with her, admitted that she had earlier given contrary statements. And thus the principle of *Napue*, that prosecutors must correct testimony that they know is false,

does not apply in this case.

In his argument on this point, Cochran also cites *Brecht v. Abrahamson*, 507 U.S. 619 (1993), in determining whether prejudice has occurred due to a constitutional violation in trial proceedings, "habeas relief is automatically granted for constitutional errors that are structural defects." Cochran Reply Br. at 5. That is beside the point here. First of all, a *Brady* or *Youngblood* error does not amount to a "structural defect." "Structural errors are a very limited class of errors that affect the framework within which the trial proceeds"; some examples are the total deprivation of counsel, the lack of an impartial trial judge, a violation of the right to a public trial, and an erroneous reasonable-doubt instruction. *United States v. Maez*, 960 F.3d 949, 957 (7th Cir. 2020) (cleaned up). And even if the opposite were true, *Brecht* comes into play only after a petitioner has shown a constitutional error. Cochran has not done so, for the reasons just discussed.

### b.    Ineffective assistance of counsel (claim 2)

Cochran next contends that his trial counsel was ineffective for failing to seek sanctions, such as a mistrial, due to the prosecution's failure to produce S.M.'s written statement. Cochran argued that because his trial "was totally based on evidence and credibility," trial counsel's inability to respond to the omission of S.M.'s written statement during the trial prejudiced him. Cochran Reply Br. at 6.

To prevail in raising an ineffective assistance of counsel claim, Cochran must meet the *Strickland* test and show that (1) counsel's representation fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defendant." *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000) (internal

citations and quotation marks omitted); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court concludes that the state court's finding that Cochran's claim lacked merit is neither contrary to nor an unreasonable application of clearly established Supreme Court law.

The state appellate court found that because Cochran was unable to meet the *Youngblood* standard with regard to the nonproduction of S.M.'s earlier statement, he could not sustain his ineffective assistance claim. More specifically, the court stated as follows:

> [E]ven if we were to assume that S.M.'s supposed written statement was favorable to defendant on the issue of consent, we cannot conclude that evidence of her written statement would have altered the result of defendant's trial. As defendant has failed to show prejudice, or that any sanction was warranted, we agree with the trial court's ultimate conclusion that trial counsel was not ineffective in this regard.

*People v. Cochran*, 2023 IL App (2d) 210298-U, ¶ 24.

This was a reasonable application of *Strickland*. Prejudice under *Strickland* requires Cochran to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 669. Reasonable probability means a "substantial, not just conceivable likelihood of a different result." *Shinn v. Kayer*, 592 U.S. 111, 118 (2020).

As discussed earlier, the state appellate court concluded that S.M.'s written statement was cumulative, at least assuming the statement was favorable to Cochran on the issue of consent. The reason, as the Court has discussed, is that S.M. admitted at the trial that she had told a defense investigator that she consented to sex with the

Cochran and that she had not been raped.  There is no basis to believe that the missing written statement by S.M. would have added anything material to this admission.  For this reason, a motion for mistrial based on *Youngblood* did not have a reasonable possibility of success.  Cochran's ineffective assistance claim based on the failure to make that motion therefore falls short.  The Court acknowledges that an earlier exculpatory statement to the police and one to a defense investigator are not, or at least might not be perceived to be, identical.  But the state court's contrary determination was not unreasonable.   "Under § 2254(d), that [the state court] reached a reasonable [result] is sufficient" to preclude habeas corpus relief.  *Premo v. Moore*, 562 U.S. 115, 128 (2011).

## B.    Ineffective assistance / inadequate preparation (claim 3)

Cochran contends that the replacement attorney who was appointed to represent him three weeks before trial was unprepared.  As respondent notes, however, Cochran did not pursue this claim in his appeal from the denial of his post-conviction petition or in his PLA filed with the state supreme court.  This amounts to a procedural default; the fact that Cochran asserted ineffective assistance on separate grounds is of no consequence.  *See Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) ("[T]he failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to a procedural default.").

A respondent in a habeas corpus proceeding may assert the procedural default doctrine as a defense against the prisoner's claim for relief.  Once asserted, the petitioner must show that he presented each of his claims through every level of state review, on either direct appeal or post-conviction proceedings as appropriate.  *See*

17

*Bolton v. Akpore*, 730 F.3d 685, 694 (7th Cir. 2013*)* ("[A] petitioner must assert his federal claim through one complete round of state court review, either on direct review or in post-conviction proceedings."); *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006).  Cochran is unable to show that he presented this claim through a complete round of state review, and although a habeas corpus petitioner may overcome a default by showing cause and prejudice, Cochran has made no effort to do so.  *See Garcia v. Cromwell*, 28 F.4th 764, 771 (7th Cir. 2022) ("Unless the petitioner can establish 'cause' for and 'prejudice' from the default, 'federal habeas review is at an end.'") (internal citations and quotation marks omitted).

The Court therefore declines to address the merits of this claim; it has been procedurally defaulted.

**C.**     **Ineffective assistance / failure to impeach
          S.M. based on Investigator Serrato's report (claim 4)**

Cochran's last ground for relief is an ineffective assistance claim based on trial counsel's failure to admit investigator Serrato's report into evidence.  He contends that it was "ineffective for counsel to fail to even attempt to introduce Investigator Serrato's report" because it includes "key" statements by S.M. about smoking marijuana with Cochran, that no rape occurred, and that DCFS called her while she was at the hospital and threatened to take her children.  Habeas Corpus Pet. (dkt. 1), ECF p. 11 of 17; Cochran Reply Br. at 8.  Cochran argues that "none of this was covered by Mr. Bailey" (defense counsel).  *Id.*

Respondent argues that Cochran defaulted on this claim because, although he presented it in his postconviction petition, he did not assert it on appeal or in his PLA. Specifically, respondent contends that on appeal, Cochran argued that counsel was

ineffective for failing to effectively impeach S.M. based on her statements to Investigator Serrato, not due to counsel's failure to offer the investigator's report into evidence.

This is too narrow a reading of what Cochran contended in state court. In his supplemental post-conviction petition, Cochran asserted an ineffective assistance claim grounded in counsel's failure to "commit" S.M. to her prior inconsistent statements and counsel's failure to introduce investigator Serrato's report into evidence. These claims both involved allegedly ineffective impeachment of S.M. based on her prior statement to the defense investigator.

Cochran included this same argument in his appellate brief. Cochran argued that "trial counsel should have more fully impeached S.M. with her prior statement to defense investigator Marilu Serrato." Def. Ex. 12 at 29. He went on to state that counsel "failed to maximize the . . . full potential" of investigator Serrato's report. Def. Ex. 12 at 29. He noted that the report included S.M.'s statements about smoking cannabis and consenting to sex, DCFS's proposal that S.M. relinquish her parental rights, and her initial denial of being raped—arguing that trial counsel could have impeached S.M. based on these prior statements. Although Cochran did not say in so many words that trial counsel should have *introduced* the report, that was necessarily encompassed in his appellate arguments about ineffective impeachment. Moreover, Cochran prefaced his appellate argument with the statement, "[a]s post-conviction counsel argued below," indicating that he was asserting the same argument as he had in the trial court, where he did expressly contend that counsel should have introduced the investigator's report into evidence. Def. Ex. 12 at 29.

Cochran has filed his federal habeas corpus petition without the benefit of

19

counsel. In his reply brief, he includes arguments similar to those he made in his state court post-conviction appellate brief: investigator Serrato's report should have been admitted into evidence because it would have allowed counsel to commit S.M. to her prior statements, and defense counsel was ineffective in failing to do so. Although Cochran does not use the term "impeachment," his argument as a pro se plaintiff must be construed liberally. *See Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010) ("In determining whether a claim has been fairly presented, we liberally construe pro se petitions such as Ward's."). As in his appellate brief, it is clear that Cochran is arguing that the report should have been used to impeach S.M. *and* should have been offered into evidence. It is well-established that the requirement of "[f]air presentment . . . does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Benik*, 471 F.3d 811, 814–15 (7th Cir. 2006); *see also Picard v. Connor*, 404 U.S. 270, 277–78 (1971) ("Hence, we do not imply that respondent could have raised the equal protection claim only by citing 'book and verse on the federal constitution.'. . . We simply hold that the substance of a federal habeas corpus claim must first be presented to the state courts."). Cochran's arguments about the report in all three filings get at the same essential point: he contends defense counsel was ineffective in failing to properly use Serrato's report to impeach S.M.'s testimony, whether that means using the report to impeach S.M., using it to commit her to her statements in the report, or offering it into evidence. The Court therefore concludes that the substance of Cochran's current argument was fairly presented to the state courts through a complete review cycle and thus that the claim is not defaulted.

The Court therefore proceeds to analyze the claim on the merits and asks whether the state appellate court's decision was contrary to or an unreasonable application of Supreme Court law. As summarized in an earlier section of this opinion, under *Strickland,* Cochran must show that trial counsel's performance fell below an objective standard of reasonableness and that he was prejudiced as a result. *Strickland*, 466 U.S. at 690.

In addressing Cochran's argument that his counsel was ineffective in failing to impeach S.M. based on her statements to Investigator Serrato, the state appellate court found that this is a matter that "fall[s] within the purview of trial strategy and [is] generally immune to challenge." *People v. Cochran*, 2023 IL App (2d) 210298-U, ¶ 25. The court noted that there were various reasons why defense counsel may not have pressed S.M. on these issues, including the need to retain the jury's ability to like the defendant in what was an extremely sensitive and charged case.

The state appellate court went on to state that "[f]urthermore, *all* of this evidence *was* presented to the jury by defense counsel to impeach S.M." *Id.* The Court agrees that defense counsel did ask S.M. whether she had smoked marijuana with Cochran and whether she had initially consented to sex with him, but the record does not indicate that the issue of DCFS's communication with S.M. was raised. That, however, is not dispositive. *Malone v. Walls*, 538 F.3d 744, 762 (7th Cir. 2008) ("Counsel's failure to impeach Stewart on this one variation, *standing alone,* does not rise to the level of ineffective assistance, nor is there a reasonable probability that it affected the outcome of the trial.").

Furthermore, the fact that defense counsel did cross-examine S.M. on consent

and marijuana usage, even if not to the extent that Cochran would have preferred, demonstrates that counsel had thought through this bucket of issues and conducted an objectively reasonable cross-examination.  It is not apparent what value the introduction of the report itself would have added on the points identified by Cochran.  Although the report has potentially favorable evidence for Cochran, it also includes unfavorable evidence, such as the statement that "Jeremiah then beat Simone severely, during which he asked her if she wanted to have sex. Simone said no."  Habeas Corpus Pet. (dkt. 1), ECF p. 11 of 17.  If this had come in, it would have undercut counsel's strategy, which was rooted in the issue of consent.  That aside, it is at best questionable whether the report would have been admissible in evidence for the truth of S.M.'s statements in the report, as doing so almost certainly would have prompted a meritorious hearsay objection.

The Court concludes that the state appellate court reasonably applied Supreme Court precedent in rejecting Cochran's ineffective assistance claim based on trial counsel's approach to Investigator Serrato's report in the context of S.M.'s cross-examination.

## Conclusion

For the reasons stated above, the Court denies Cochran's petition for a writ of habeas corpus and directs the Clerk to enter judgment stating:  The petition for a writ of habeas corpus is denied.  The Court also declines to issue a certificate of appealability under 28 U.S.C. § 2253(c)(2).  The correctness of the Court's rulings that Cochran procedurally defaulted certain claims is not fairly debatable, and the Court finds no substantial constitutional questions on the claims addressed on the merits.  *See Slack v.*

*McDaniel*, 529 U.S. 473, 478 (2000); *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003) ("A certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal.").

Date:  February 25, 2025

_____
MATTHEW F. KENNELLY
United States District Judge